UNITED STATES of America, Libellant,

v.

ONE PHILCO TELEVISION, Model L3804BE; One Nivico Transistor Radio, Model 11A7; One G. E. Wall Clock, Model 2H117; and $4,688.00 in U. S. Currency, Respondents.

No. 65-H-710.

United States District Court
S. D. Texas,
Houston Division.

Oct. 3, 1968.

Ronald Blask, Asst. U. S. Atty., Houston, Tex., for libellant.

Ben Blum, Houston, Tex., for respondents.

SINGLETON, District Judge.

*Memorandum and Order.*

This is a libel proceeding brought under 26 U.S.C. § 7302 (1967) to perfect forfeiture of one Philco television, one Nivico Transistor Radio, one G. E. wall clock, and $4,688.00 in U. S. currency. The libel alleges that on June 5, 1964, special agents of the Internal Revenue Service, while in the performance of their official duties, seized the items and currency involved which were intended for use and had been used in violation of 26 U.S.C. §§ 4401, 4411, 4412, 4901, 4905, 7203, 7262, 7272 (1967). These sections of the Internal Revenue Code deal with those engaged in the business of accepting wagers.

Claimant Thomas Leon Stutts had complied with all the provisions of "the interrelated statutory scheme for taxing illegal wagering" except § 4905 requiring change of business address to be filed with the District Director.

The trial was to the Court without a jury.

The threshold problem is the effect, if any, on this case of the recent holdings of the United States Supreme Court in Marchetti v. United States, 390 U.S. 39, (1968) and Grosso v. United States, 390 U.S. 62 (1968).

In these cases the Supreme Court recognized the fact that "wagering is an area permeated with criminal statutes; * * * that those engaged in wagering are inherently suspect of criminal activities; * * * that the information obtained as a consequence of the federal wagering tax laws is made available to federal and state officials to enforce various criminal penalties; " and, therefore, the obligation found in wagering tax statutes to register and pay created a real and appreciable hazard of self-incrimination. The Supreme Court did not, in fact, hold the wagering tax statutes unconstitutional, but did hold criminal enforcement of these statutes constitutionally impermissible, at least in the face of a proper Fifth Amendment claim against self-incrimination.

■ The State of Texas has "comprehensive statutory prohibitions against gambling, wagering, and associated activities." See, e. g., Vernon's Ann.Tex. Penal Code 'Ann. art. 615 et seq., 1952. Claimant Stutts could not comply with provisions of Section 4905 and other federal statutes relating to taxing illegal wagering without incriminating himself under Texas law. Therefore, it is obvious that the violation in this case (failing to register a change of business address as required in Section 4905) falls within the ambit of the Marchetti and Grosso opinions.

Does Marchetti and Grosso apply to a civil forfeiture proceeding instituted prior to their decisions, and, if so, has claimant waived his privilege against self-incrimination, and therefore his right to the goods confiscated, by failing to assert his privilege at some stage of these civil proceedings?

■ It is well settled that Congress can tax illegal activities such as wagering. This Court is certain the Supreme Court was not attempting to prevent the Government from punishing criminally those who fail to pay the wagering taxes. What the Supreme Court did, and was apparently attempting to do, was to prevent federal authorities from supplying the information obtained through compliance with the wagering tax schemes to state and other federal authorities which would aid such authorities in prosecuting the individuals who complied with the wagering tax statutes. This Court can see absolutely no distinction between proceedings such as those described in Marchetti and Grosso and a civil forfeiture proceeding such as is involved in this case. Registration, whether coerced by a criminal or civil action, could result in eventual criminal prosecution.

The Seventh Circuit holds that the *Marchetti* and *Grosso* privilege is available in civil actions. United States v. United States Coin and Currency In the Amount of $8,674.00 (Angelini), 393 F.2d 499 (7th Cir. 1968). This case was a civil forfeiture case in which the federal agents seized $8,674.00 in cash on the grounds that such cash had been used in violation of the wagering tax provisions. The claimant Angelini had earlier been convicted of violation of these wagering tax laws, and the money was used in the criminal case as evidence against him. The District Court found that the money was used in violation of the internal revenue laws and ordered the property to be forfeited. Angelini appealed and the Seventh Circuit affirmed the District Court's judgment. The Supreme Court granted certiorari, vacated the judgment, and remanded the case to the Seventh Circuit for reconsideration in light of *Marchetti* and *Grosso*. See, Angelini v. United States, 390 U.S. 204, 88 S.Ct. 899, 19 L.Ed.2d 1035 (1968). Thereafter, in a per curiam opinion, the Seventh Circuit reversed the forfeiture judgment, remanded the case to the District Court for entry of a judgment in favor of the claimant, holding that the *Marchetti* and *Grosso* privilege is available even in a non-criminal proceeding. The following language by the Court of Appeals for the Seventh Circuit well states this Court's opinion and judgment on this point:

"*Marchetti* holds that compliance with §§ 4411 and 4412 subjects the taxpayer to 'real and appreciable,' and not merely 'imaginary and unsubstantial,' hazards of self-incrimination. (390 U.S. at p. 48, 88 S.Ct. at p. 702).

"Claimant Angelini would have subjected himself to exactly the same hazards by complying. In this respect *Marchetti* and this case are the same. But the consequences of non-compliance are not the same in the two cases. The prospects of a felony conviction involved in *Marchetti* of course has a greater coercive effect than the possible loss of money involved herein.

On the other hand, the prospect of losing in excess of $8,000 has a substantial coercive effect. In this respect, the landmark case of Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, is controlling. *Boyd* was a civil forfeiture action in which the claimant was given the choice between producing a possibly incriminating document and forfeiting the property. The Court held that such a choice was impermissible under the Fourth and Fifth Amendments. See Garrity v. State of New Jersey, 385 U.S. 493, 496, 497, 87 S.Ct. 616, 17 L.Ed.2d 562, which reaffirms and follows *Boyd*."

The United States District Court for the Northern District of Illinois, Eastern Division, in the case of United States v. Riccio et al., 282 F.Supp. 979 (N.D.Ill. 1968) follows the lead of *Angelini* and also holds that the *Marchetti* and *Grosso* privilege is available in a civil action. In that case the Government brought a civil action alleging that the defendants were engaged in the wagering business and that each of them had failed to comply with the wagering tax statutes. The Government sought an injunction, asking that these defendants be enjoined from participating in the business of receiving or accepting wagers until they had complied with the wagering tax statutes. Defendants filed a motion to dismiss in which they asserted their privilege against self-incrimination. The District Court treated defendants' motion to dismiss as a motion for summary judgment. The Government's motion for temporary and permanent injunction was denied and defendants' motion for summary judgment was granted.

█ Therefore, in the light of *Marchetti* and *Grosso* this Court holds that claimant Stutts had the right not to be coerced into furnishing the information required by the wagering tax statutes, and following the reasoning of the Court of Appeals for the Seventh Circuit in *Angelini* and District Judge Napoli in *Riccio,* this Court holds that the privilege against self-incrimination is available in

a civil action and particularly in this civil forfeiture proceeding.

With respect to the waiver point, this Court notes that in *Grosso* the Supreme Court ordered that his conviction be reversed on the occupational tax counts to which he had pled guilty, holding as follows:

"Given the decisions of this Court in *Kahriger* [United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754] and *Lewis* [Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475], supra, which were on the books at the time of petitioner's trial, and left untouched by Albertson v. SACB [382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165], supra, we are unable to view his failure to present this issue as an effective waiver of the constitutional privilege." 390 U.S. at 71, 88 S.Ct. at 715.

In this connection the opinion of the Supreme Court in Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L. Ed.2d 923 (1968), a companion case to *Marchetti* and *Grosso*, is authoritative. Although the Supreme Court did not find it necessary to go into detail concerning the issue of waiver in the text of its opinion, the Supreme Court did add a footnote reading as follows:

"Petitioner's plea of guilty did not, of course, waive his previous claim of the constitutional privilege. See, e. g., United States v. Ury, [2 Cir.] 106 F. 2d 28 [124 A.L.R. 569]."

Further, the waiver problem seems to have been resolved in this Circuit by United States v. Butler, Cause Nos. 22,774 and 23,055, United States Court of Appeals for the Fifth Circuit. In that case Butler, in 1965, pled guilty to violations of the wagering tax provisions. After being sentenced, Butler sought to overturn his plea of guilty, and his motion in this respect was denied in the trial court. Butler then appealed to the Fifth Circuit which affirmed Butler's conviction, 361 F.2d 220 (5th Cir. 1966). On application for certiorari, the Supreme Court vacated and remanded for further consideration in light of the *Marchetti* and *Grosso* cases. On May 24, 1968, the Fifth Circuit ordered the Government to show cause "why the judgments of conviction [in certain cases either already pending before or remanded to the Fifth Circuit] should not be vacated and the causes remanded to the District Courts for further proceedings not inconsistent with *Marchetti* and *Grosso*." Thereafter, the Government conceded that the judgment of convictions in *Butler* based on his plea of guilty should be vacated. After the filing of this response by the Government, the Fifth Circuit entered an order vacating the convictions of Butler and remanded the cause to the District Court for dismissal of the indictment.

▮ Accordingly, in criminal cases involving violations of the wagering and tax statutes where convictions were entered before *Marchetti* and *Grosso* based upon guilty pleas, the Supreme Court, the Seventh Circuit, and the Fifth Circuit seem to hold that the defendant, by not asserting his privilege of self-incrimination, did not waive such right because at that time there could be no intentional relinquishment of a known right or privilege. The same reasoning must necessarily apply in a civil forfeiture case, and this Court holds that in such a case, as in this case, claimant does not waive his rights against self-incrimination where the forfeiture and trial occurred before *Marchetti* and *Grosso*, even though such rights were not asserted at the time of the forfeiture or during the trial of the case.

Therefore, this Court holds the forfeiture of the property involved in this case is constitutionally impermissible in that claimant Stutts had the right not to be coerced into furnishing such evidence which was incriminating to him; that he did not waive his privilege against self-incrimination; and, accordingly, all of the money and property seized should be returned to him.